IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| REMTEK SERVICES, INC., | |
| Plaintiff, | |
| v. | Civil No. 19-12790 (RBK/KMW) |
| WELLS FARGO BANK, N.A., | **OPINION** |
| Defendant. | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion to Dismiss (Doc. No. 6) Plaintiff Remtek Services, Inc.'s ("Remtek") Complaint (Doc. No. 1 at 11–24 ("Compl.")). Remtek contends it was the victim of a scheme by which fraudsters sought to steal from it, its suppliers, and its customers using Wells Fargo bank accounts. Believing Wells Fargo to be at least partly responsible, Remtek brought suit, seeking damages for Wells Fargo's negligence and breach of fiduciary duty, as well as injunctive relief. Ultimately, the Court concludes that none of Remtek's claims are viable, and therefore **GRANTS** Wells Fargo's Motion.

**I.    BACKGROUND**

Remtek's skeletal Complaint provides only a thin outline of the alleged fraud and Wells Fargo's involvement. Remtek is a commercial roofing company in Deptford, New Jersey. (Compl. at ¶ 5). On December 17, 2018, one of Remtek's customers, Prince Minerals, Inc., contacted Remtek's President, Timothy Nuhfer, about a request purportedly from Remtek to wire $94,000

to a new Wells Fargo bank account established in Remtek's name. (*Id.* at ¶ 6). After investigating this request, Remtek discovered that a fraudster had accessed Nuhfer's email account and had been impersonating Nuhfer in conversations with Prince Minerals, Inc. (*Id.* at ¶ 7). Remtek then took unspecified action to address the theft of Nuhfer's identity. (*Id.* at ¶ 8).

Remtek also discovered that the fraudster had attempted to make four withdrawals from Remtek's real bank account at PNC Bank into the fraudulent Wells Fargo account. (*Id.* at ¶ 9). These attempted withdrawals totaled $11,000. (*Id.*). Remtek was able to cancel these withdrawals and to close its account at PNC Bank. (*Id.* at ¶12).

On December 20, 2018, Everest Systems, one of Remtek's suppliers, contacted Remtek about an outstanding invoice for $64,109.96. (*Id.* ¶ 10). Upon investigation, Remtek discovered that fraudsters had been impersonating Everest Systems employees since October 3, 2018, and had directed Remtek to make the $64,109.96 payment into a Wells Fargo bank account on November 9, 2018. (*Id.* at ¶ 11).

Although Remtek has repeatedly notified Wells Fargo about these fraudulent accounts, Wells Fargo has refused to discuss these accounts with Remtek or its representatives. (*Id.* at ¶ 13). Further, Wells Fargo has not taken action to address the accounts created in Remtek's name. (*Id.* at ¶ 12).

Apparently frustrated with Wells Fargo's intransigence, Remtek commenced this lawsuit in New Jersey Superior Court on April 8, 2019. (Doc. No. 1 at ¶ 1). Count I of the Complaint charges Wells Fargo with negligence and Count II with breach of fiduciary duty, while Count III seeks injunctive relief. On May 22, 2019, Wells Fargo timely removed the action, invoking this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. (*Id.* at ¶ 5). Wells Fargo then filed the present Motion to Dismiss on June 12, 2019.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the Court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the Court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 680). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Finally, "when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679). A complaint cannot survive a motion to dismiss where a court can only infer that a claim is merely possible rather than plausible. *Id.*

## III. DISCUSSION

Remtek alleges three separate instances when fraudsters attempted to extract funds either from it or its customers: (1) when the fraudsters attempted to solicit a $94,000 payment from Prince

3

Minerals, Inc. into a Wells Fargo bank account opened by the fraudsters in Remtek's name; (2) when the fraudsters attempted to extract funds from Remtek's actual bank account into a Wells Fargo bank account opened by the fraudsters in Remtek's name; and (3) when the fraudsters[1] successfully impersonated Remtek's supplier, Everest Systems, extracting a $64,109.96 payment from Remtek into a Wells Fargo bank account. With respect to the first two instances, Remtek's theory is that Wells Fargo should be liable for permitting the fraudsters to open an account in Remtek's name; with respect to the third, Remtek's theory is not clearly stated.

The Court begins by assessing whether Remtek has sufficiently pled negligence with respect to the creation of the fraudulent bank accounts in its name. Next the Court examines whether the negligence claim relating to the $64,109.96 wire transfer is preempted by Article 4A of the Uniform Commercial Code ("U.C.C."). Finding that the Complaint does not allege any viable negligence claims, the Court then considers whether Remtek may still press a claim for breach of fiduciary duty. Finally, the Court turns to Remtek's demand for injunctive relief.

**A. Negligence—Bank Accounts in Remtek's Name**

In New Jersey, a plaintiff pleading negligence bears the burden of establishing four elements: "(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." *Townsend v. Pierre*, 110 A.3d 52, 61 (N.J. 2015) (internal quotation omitted). Remtek's allegations raise the question of whether banks have a state common law duty to protect against identity thieves opening bank accounts in their victims' names. Wells Fargo contends that New Jersey law definitively forecloses the existence of such a duty, relying on *Brunson v. Affinity Fed. Credit Union*, 972 A.2d 1112 (N.J. 2009). (Doc. No. 15 ("Reply") at 10). Wells Fargo reads *Brunson* for more than it is worth; although the New Jersey Supreme Court found that the bank in

---

[1] It is unclear if Remtek is alleging that the fraudsters were the same individuals in each instance, but as their identity is immaterial at the present stage, the Court refers to them as though they were the same.

4

that case owed no duty to the plaintiff, it specifically left open the possibility that "in appropriate circumstances, a bank may have a duty of care to an innocent, unrelated third party harmed by the theft of his or her identity." *Brunson*, 972 A.2d at 1125 n.13.[2]

Nevertheless, Remtek's negligence claims still fail because it has not alleged actual damages. Through good luck and quick action, Remtek was able to prevent the fraudsters' efforts to elicit the $94,000 payment from Prince Minerals, Inc. and to withdraw funds from Remtek's legitimate bank account. As such, on the face of the Complaint, Remtek has not suffered any harm from Wells Fargo's failure to prevent the fraudsters from opening a bank account in Remtek's name. Consequently, these claims must be dismissed, without prejudice. *See Signature Bank v. Check-X-Change, LLC*, No. 12-2802, 2013 WL 3286154, at *4 (D.N.J. June 27, 2013) (dismissing negligence claim because damages allegations were conclusory).

### B. Negligence—the $64,109.96 Payment

Remtek contends that Wells Fargo's negligence claim related to the $64,109.96 payment is preempted by Article 4A of the U.C.C. as adopted by the New Jersey legislature at N.J.S.A. 12A:4A-101 *et seq*. (Doc. No. 6-1 ("Def. Brief") at 16–18). Article 4A sets out specialized rules for funds transfers, and the parties do not seem to dispute that the $64,109.96 payment was a funds transfer within the meaning of the statute. The Official Comment to Article 4A makes clear that its provisions are "intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation [they cover]." N.J.S.A. 12A:4A-102 cmt. 1. Further, the New Jersey Supreme Court has held that Article 4A preempts common law negligence

---

[2] In *Brunson*, an identity thief opened a bank account in the plaintiff's name and proceeded to use the account to cash a series of fraudulent checks. *Id*. at 1114–15. Once the bank discovered that the checks were fraudulent, it investigated and filed criminal complaints against the plaintiff, leading to his arrest and detention. *Id*. at 1115–16. The New Jersey Supreme Court feared that allowing the plaintiff to pursue a negligence claim would create a "back door" avoiding the demanding requirements of a malicious prosecution claim, and therefore refused to find that the bank owed the plaintiff a duty of care. *Id*. at 1124–1125. As both these facts and the concern about circumventing the requirements of a malicious prosecution claim are inapposite to the present case, *Brunson* does not control.

5

claims that "contravene" its provisions, as when the "case arises from a setting directly addressed by Article 4A." *ADS Assocs. Grp., Inc. v. Oritani Sav. Bank*, 99 A.3d 345, 358–59 (N.J. 2014). As such, if a provision of Article 4A directly applies to the circumstances surrounding the $64,109.96 payment, Remtek's negligence claim related to that payment is preempted.

Wells Fargo contends that Section 4A-207(b) directly applies. (Def. Brief at 17). That section specifically provides that:

> (2) If a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons, the following rules apply:
>
> (a) . . . [I]f the beneficiary's bank does not know that the name and number refer to different persons, it may rely on the number as the proper identification of the beneficiary of the order. The beneficiary's bank need not determine whether the name and number refer to the same person.
>
> (b) If the beneficiary's bank pays the person identified by name or knows that the name and number identify different persons, no person has rights as beneficiary except the person paid by the beneficiary's bank if that person was entitled to receive payment from the originator of the funds transfer. If no person has rights as beneficiary, acceptance of the order cannot occur.

N.J.S.A. 12A:4A-207(b).

The main effect of Section 4A-207(b) is to authorize banks to process payment orders by relying only on the provided account number. *See* N.J.S.A. 12A:4A-207 cmt. 2 (explaining that the beneficiary's bank "has no duty to determine whether there is a conflict and it may rely on the number as the proper identification of the beneficiary of the order"). As such, banks are immune from liability if they fail to confirm that the name of the beneficiary on the payment order matches the name on the bank account identified by the provided account number, unless they have actual knowledge of the discrepancy. Because negligence claims do not have this actual knowledge requirement, courts have repeatedly found that Article 4A preempts negligence clams where the bank processed a payment order despite the existence of a discrepancy between the beneficiary

identified on the payment order and the name on the account identified by the provided account number. *See Peter E. Shapiro, P.A. v. Wells Fargo Bank, N.A.*, 18-60250, 2018 WL 8334591, at *3–4 (S.D. Fla. April 4, 2018) (interpreting identical Florida U.C.C. provision as preempting common law negligence claim based on fraudulent funds transfer); *Sliders Trading Co. L.L.C. v. Wells Fargo Bank NA*, No. 17-04930, 2017 WL 6539843, at *5 (N.D. Cal. Dec. 21, 2017) (interpreting identical California provision and concluding that because the U.C.C. provides a remedy for a bank's processing of fraudulent payment orders, it displaces common-law claims"). Consequently, to the extent Remtek is claiming that Wells Fargo was negligent when processing the $64,109.96 payment, such claim is clearly preempted and must be dismissed.

By contrast, "claims alleging negligence in the opening of an account that are not inconsistent with Article 4A may go forward." *ADS Assocs. Grp.*, 99 A.3d at 370 (citing *Wachovia Bank, N.A.*, 301 F.3d 220, 224 (4th Cir. 2002) (finding negligence claim against bank was not preempted where fraudster convinced plaintiff he was an executive at Bear Stearns and had the plaintiff wire $1,000,000 to a bank account he had opened in Bear Stearns' name)). As such, Article 4A may not preempt Remtek from bringing a claim asserting that Wells Fargo was negligent in allowing the fraudsters to open an account in the first place.[3] But the face of the Complaint is unclear as to whether Remtek is pursuing such theory, as it only says the account was "fraudulent." (Compl. at ¶ 11).[4] Without more detail, the Court can only speculate as to why Wells Fargo was negligent in permitting this account to be opened.

---

[3] Nothing in this Opinion should be read as deciding this issue one way or the other.
[4] Remtek's Opposition Brief is similarly unhelpful, merely saying that "there are various scenarios through which the Plaintiff could maintain successful causes of action against Wells Fargo whether or Article 4A is implicated" without explaining what those scenarios are. (Doc. No. 14 ("Pl. Brief") at 30). Although the brief repeatedly stresses that Wells Fargo was negligent in allowing the fraudsters to open accounts in Remtek's name, it makes no similar statement that Wells Fargo was negligent when it allowed the fraudsters to open the account to which Remtek wired $64,109.96.

7

Although the Court must view the Complaint in the light most favorable to Remtek, it is still Remtek's burden to allege facts that add up to a plausible claim to relief. As such, the Court will not reward the Complaint's ambiguity, but will only dismiss these claims without prejudice. *See Bobo v. Wildwood Public Schs. Bd. of Educ.*, 13-5007, 2014 WL 2215935, at *7 (D.N.J. May 28, 2014) (explaining that "the Court is not required to read facts into Plaintiff's Complaint that simply do not exist"). If Remtek wishes to amend its Complaint to include allegations setting forth how Wells Fargo was negligent when it permitted the fraudsters to open the account to which Remtek wired $64,109.96, it may attempt to do through a timely filed motion.

### C. Fiduciary Duty

Although it is an open question whether Wells Fargo owed Remtek *some* duty to protect against fraudsters opening bank accounts, Wells Fargo certainly did not owe Remtek a *fiduciary* duty. Assessing the existence of a fiduciary duty is a question of law. *United Jersey Bank v. Kensey*, 704 A.2d 38, 43 (N.J. Super. Ct. App. Div. 1997). "A fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship." *F.G. v. MacDonell*, 696 A.2d 697, 704 (N.J. 1997). Generally, "there is no presumed fiduciary relationship between a bank and its customer." *United Jersey Bank*, 704 A.2d at 44.

The Complaint alleges no facts suggests that Wells Fargo owed Remtek a fiduciary duty; indeed, it contains no suggestion that Wells Fargo and Remtek had any relationship whatsoever prior to the filing of this lawsuit.[5] As the Complaint simply provides no reason for the Court to conclude that Wells Fargo owed Remtek a fiduciary duty, these claims must be dismissed.

---

[5] In its opening brief, Wells Fargo asserts that Remtek does have a line of credit with Wells Fargo, (Def. Brief at 7 n.1), which Remtek appears to confirm in its Opposition. (Pl. Brief at 11–12). Even if it is true that Remtek is a Wells Fargo customer, Remtek's claim would still fail. Because creditor-debtor relationships are adversarial, "[t]he

**D. Injunctive Relief**

In Count III, Remtek seeks an injunction requiring Wells Fargo to: (1) immediately close the fraudulent Wells Fargo accounts created in Remtek's name; and (2) provide Remtek with records relating to these accounts. (Compl. at ¶ 32). Wells Fargo argues that Remtek lacks standing to seek such injunctive relief.[6] (Def. Brief at 22–24). When seeking injunctive relief, it is not enough to allege past injury from the defendant's actions; rather, the plaintiff "must establish that she is likely to suffer future injury from the defendant's conduct." *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d 278, 292 (3d Cir. 2018) (internal quotation omitted).

Remtek fails to carry its burden. Although the Complaint alleges that Wells Fargo has permitted fraudsters to open accounts in Remtek's name, and that the fraudsters have attempted to use these accounts to steal from Remtek in the past, it does not allege that these accounts are currently being used in any scheme to defraud Remtek, nor that they will be in the future. Rather, Remtek seems principally concerned about "resolving the injury and damage incurred by the cyberattack and related fraud." (Compl. at ¶ 30). But as discussed above, the fraudsters were unsuccessful in their attempts to use the accounts they created in Remtek's name to steal from Remtek and Prince Minerals, Inc., making it unclear what "injury and damage" Remtek is referring to. Consequently, Remtek has not established that its proposed injunction would protect it from

---

virtually unanimous rule is that [they] rarely give rise to a fiduciary duty." *United Jersey Bank*, 704 A.2d at 44. The Complaint provides no indication that the relationship between Remtek and Wells Fargo was exceptional.

[6] Because standing goes to the Court's subject-matter jurisdiction, Wells Fargo should have raised this argument in a Rule 12(b)(1) motion to dismiss, rather than a motion pursuant to Rule 12(b)(6). Nevertheless, because constitutional standing is mandatory, the Court must consider standing issues wherever and whenever they present themselves. *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 360 n.9 (3d Cir. 2013). Further, the Court has the power to dismiss claims for lack of subject-matter jurisdiction *sua sponte* pursuant to Federal Rule of Civil Procedure 12(h)(3).

likely future harm or alleviate existing harm, meaning that Count III must be dismissed for lack of standing.

## IV. CONCLUSION

For the forgoing reasons, Wells Fargo's Motion to Dismiss is **GRANTED** and Remtek's Complaint is **DISMISSED WITHOUT PREJUDICE** pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(h)(3). Remtek may file a motion to amend its Complaint, consistent with this Opinion, Federal Rule of Civil Procedure 8, and Local Civil Rule 15.1, on or before January 30, 2020. An Order follows.


Dated: 1/16/2020 /s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge